MCCOY ENTERPRISES, INC. AND SUBSIDIARIES, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent; MCCOY ENTERPRISES, INC. AND SUBSIDIARIES, TRANSFEREE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
McCoy Enters. v. Commissioner
Docket Nos. 5626-90, 5627-90
United States Tax Court
T.C. Memo 1992-693; 1992 Tax Ct. Memo LEXIS 741; 64 T.C.M. (CCH) 1449; December 7, 1992, Filed *741 Decision will be entered under Rule 155 in docket No. 5626-90. Decision will be entered for petitioners in docket No. 5627-90. R determined deficiencies against corporations related to a disqualified DISC, which deficiencies arose on account of such disqualification. The disqualification was precipitated by an amount shown on the DISC's tax return as "producer's loans". R determined that the item in question represented a nonqualified export asset and disqualified the DISC. Ps argue that the item in question was not an asset at all but a record of actual distributions made to the DISC's parent. 1. Held: The item in question represents a nonqualified export asset and results in the disqualification of the DISC. 2. Held, further, under sec. 482, I.R.C., the items of income and deduction of the DISC for the year of disqualification are reallocated to a related corporation. 3. Held, further, on account of such reallocation, the DISC has no tax liability, so the recipient of the DISC's assets cannot be liable as a transferee subject to procedures of sec. 6901, I.R.C.
4. Held, further, the parent of the DISC is liable for tax on a constructive *742 distribution of the DISC's accumulated DISC income. 5. Held, further, additions to tax under sec. 6653(a)(1) and (2), I.R.C., are not sustained as a result of good faith reliance on the tax advice of an accountant. 6. Held, further, an addition to tax for substantial understatement of income is sustained pursuant to sec. 6661, I.R.C.
For Petitioners: Merril R. Talpers and Debra L. Spence. For Respondent: Michael L. Boman and James E. Cannon. HALPERN
HALPERN
MEMORANDUM FINDINGS OF FACT AND OPINION HALPERN, Judge: By a notice of deficiency dated December 22, 1989, respondent determined a deficiency and additions to tax against petitioners as follows: Tax Year
Additions To Tax
Ended
Deficiency
Sec. 6653(a)(1)
Sec. 6653(a)(2)
Sec. 6661
9/30/85
$ 121,691
$ 6,085
50% of the
$ 30,423
interest due
on $ 121,691
By a notice of liability dated December 22, 1989, respondent asserted transferee liability against petitioners for a deficiency and additions to tax as follows: Tax Year
Additions to Tax
Ended
Deficiency
Sec. 6653(a)(1)
Sec. 6653(a)(2)
Sec. 6661
10/31/84
$ 52,949.98
$ 2,647.50
50% of the
$ 13,237.50
interest due
on $ 52,949.98
*743 Unless otherwise noted, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. The deficiency and additions to tax for the taxable year ended September 30, 1985, are determined against petitioners on the basis of the consolidated return made by petitioner McCoy Enterprises, Inc. (Enterprises), as common parent of an affiliated group of corporations. The deficiency and additions to tax for the taxable year ended October 31, 1984, are asserted against petitioners on account of the transferee liability of one member of that affiliated group of corporations, petitioner McCoy Co., Inc. (McCoy Co.), as transferee of the property of Orion International, Inc. (International), a defunct subsidiary of McCoy Co.[1]
*744 The issues remaining for decision are: (1) Whether International failed to qualify as a domestic international sales corporation (DISC) for its taxable year ended October 31, 1984; (2) if, as respondent contends, International did not qualify as a DISC for that taxable year, (a) whether, under section 482, its taxable income for that year should be allocated to petitioner Orion Fittings, Inc. (Fittings), and (b) whether petitioner McCoy Co. is deemed to have received as a dividend in its taxable year ended September 30, 1985, a distribution of accumulated DISC income of International; (3) whether additions to tax for negligence and substantial understatement of income should be sustained; and (4) whether petitioner McCoy Co. is liable as a transferee of International for any deficiency or additions sustained against International. [2]
*745 FINDINGS OF FACT Some facts have been stipulated and are so found. The stipulation of facts filed by the parties and accompanying exhibits are incorporated herein by this reference. Enterprises is the corporate parent of Fittings, Orion Industries, Inc., and McCoy Co. International was a wholly owned subsidiary of McCoy Co. For the taxable year ended September 30, 1985, Enterprises made a consolidated return of income on behalf of itself, as common parent corporation, and Fittings, Orion Industries, Inc., and McCoy Co., as includable corporations (collectively the affiliated group). International made a return as a DISC for its taxable year ended October 31, 1984. For convenience, the tax year of the affiliated group ended September 30, 1985, will be described simply as its 1985 tax year, while International's tax year ended October 31, 1984, will be described simply as its 1984 tax year. Further, the term "petitioner" hereinafter will be used only to refer to Enterprises, and petitioner and all of its subsidiaries (including International) collectively will be referred to as the McCoy companies. Petitioner's principal place of business at the time the petitions herein were *746 filed was in Kansas City, Kansas. During the years in issue, the McCoy companies were involved in various aspects of manufacturing and marketing polypropylene pipe and related items. The business of the McCoy companies is primarily a family business. It was started by John McCoy and, by the years in question, involved principally him and his brothers, including Jim McCoy. John McCoy was president of Enterprises and Jim McCoy was president of International. During the years in question, substantial amounts of the acid-waste polypropylene piping manufactured by the McCoy companies was sold to foreign purchasers. On the advice of an accountant and a lawyer, management of the McCoy companies decided to form a DISC for the purpose of carrying on business with such foreign purchasers. International, as the DISC was christened, was run, in the words of John McCoy, "as a small paper company out of your drawer". It possessed neither business offices nor employees. The functions of marketing and distribution of the piping were performed by Fittings' employees. As a matter of general practice, bills were mailed to the DISC's customers using Fittings' invoices, to which a stick-on-label *747 reading "Orion International" was affixed. Receipts from the sales ostensibly made by International were deposited into a bank account of Fittings'. There were no notes or other writings between International and Fittings indicating the parties' respective rights to those funds. During the years in issue, the records of all sales of goods manufactured by Fittings were taken to the McCoy companies' accountants, Jackson and Co. (Jackson), who would allocate all foreign sales to International and would prepare accounting records, including journals, trial balance sheets, and supporting work papers. The excess of sales proceeds attributed to International over the cost of such sales and export promotion expenses would be shown on the trial balance sheet as "amounts due", from Fittings to International. The tax return of International then would be prepared from the records developed and maintained by Jackson. Charles Mills, an accountant with Jackson, prepared the DISC return for International for its 1984 tax year as well as its final DISC return, for the short tax year ended December 31, 1984. He likewise prepared the consolidated return for the affiliated group for its 1985 *748 tax year. Prior to Jackson's preparing the first return for International, no one at Jackson had ever prepared a DISC return. On Charles Mills' own initiative, the sums shown on International's trial balance sheet as "amounts due" from Fittings were reported on International's tax returns as "producer's loans". [3] For International's 1984 tax year, Jackson computed interest due on the producer's loans, which was deducted on the consolidated return and reported as income by International. The amount reported as producer's loans on International's tax returns was increased by the current income of International as well as by the interest accruing to International on the principal of the previously extended producer's loans listed as "amounts due" from Fittings. Since all of International's income was carried as producer's loans, *749 it never reported any actual distributions to McCoy Co. Nevertheless, with regard to its 1984 tax year, International did report a deemed distribution of $ 83,532 to McCoy Co. That deemed distribution, however, was omitted from income by McCoy Co. Officers of the McCoy companies routinely reviewed all tax returns prepared by Jackson, including those for the years in question. International reported on its return for the 1984 tax year the following balances of producer's loans: Producer's loans -- end of year
$ 412,894
Producer's loans -- beginning of year
288,981
Net income
$ 123,913
International reported on that return net income of $ 123,913 (including $ 28,898 of interest on producer's loans). It reported the following balances of previously taxed income and accumulated DISC income: PTI
ADI
Total
Balance at
beginning of year
$ 148,349
$ 140,632
$ 288,981
Changes during year
83,532
40,381
123,913
Balance end of year
$ 231,881
$ 181,013
$ 412,894
Other than the aforementioned producer's loans, the only item that appeared on International's tax return balance sheet was working capital, in the amount of $ 2,500, at both the beginning and *750 end of the taxable year. Congress substantially eliminated the DISC tax advantages as of December 31, 1984. Thereupon, International ceased operating and all assets were distributed to McCoy Co. On the consolidated return for the 1985 tax year, petitioner reported that the $ 412,894 previously characterized as producer's loans had been received by Fittings as a distribution. ULTIMATE FINDING OF FACT Prior to the end of its 1984 tax year, International had not made actual distributions to McCoy Co. of those amounts shown on its 1984 tax return as producer's loans. OPINION I. Qualification as a DISC
The principal issue for determination is whether International qualified as a DISC for its 1984 tax year. A. Qualified Export Assets
The DISC provisions (secs. 991-997) were enacted by Congress in 1971 to provide tax deferral for export income of certain domestic corporations. [4] Beginning in 1985, the DISC system of deferral was substantially replaced by a less favorable system applicable to foreign sales corporations. [5] During the years here at issue, a corporation that qualified as a DISC was not taxable on its profits. Secs. 991, 995(a). A portion of such profits *751 was taxable currently to the shareholders, and tax was deferred on the remaining profits until such profits were withdrawn from the DISC, the DISC was sold, or the corporation ceased to qualify as a DISC. Secs. 995(b) and (c) and 996(a). One of the requirements for qualification as a DISC was that at least 95 percent of the adjusted basis of all of the assets of the corporation at the close of the taxable year had to be attributable to the adjusted basis of qualified export assets. Sec. 992(a)(1)(B). Such test was designed to ensure that substantially all of the assets of the DISC were devoted to exporting. H. Rept. 92-533 (1971), 1972-1 C.B. 498, 529. The term "qualified export assets" is defined in section 993(b) and includes both working capital and "obligations arising in connection with a producer's loan" (producer's loans). Sec. 993(b)(4) and (5). On its balance sheet for *752 its 1984 tax year, International listed only two assets: Working capital and so-called producer's loans. There is no disagreement between the parties that the $ 2,500 of working capital shown on International's balance sheet is a qualified export asset. As to the so-called producer's loans (opening balance of $ 288,981; closing balance of $ 412,894; increase of $ 123,913), petitioner would eliminate that item from International's balance sheet altogether. Petitioner makes no claim that the item in question constituted producer's loans, relying instead on the argument that the item never should have appeared on International's balance sheet. Petitioner claims that all profits of International were distributed as earned to its parent, McCoy Co., although deposited to an account of Fittings. Respondent disagrees that the item in question should be eliminated, but does claim that the item fails to qualify as producer's loans. We agree with respondent that the item in question did not constitute producer's loans. To be a producer's loan, there must be an obligation evidenced by a note or other evidence of indebtedness, with a stated maturity date not more than 5 years from the date *753 of the loan. Sec. 993(d)(1)(B). We have found that the item in question was not evidenced by any writing between International and Fittings. Accordingly, petitioner has not shown that section 993(d)(1)(B) was satisfied as to any portion of the item in question. [6]
Petitioner does not ask us to, and we do not, consider whether the item in question otherwise qualified as a qualified export asset within the meaning of section 993(b). Rather, we turn to petitioner's argument that the item should not have appeared on the balance sheet of International at all, and therefore should not be considered as an asset for purposes of our DISC analysis. If petitioner fails in that argument, *754 then it is clear that International did not qualify as a DISC for its 1984 tax year, since the adjusted basis of nonqualified export assets exceeded 5 percent of the adjusted basis of all of its assets. Sec. 992(a)(1)(B). B. Inclusion (or Noninclusion) of the Item in Question
1. Petitioner's Argument
Although the item in question was labeled as producer's loans on International's return for its 1984 tax year, petitioner argues that that characterization was the result of a unilateral mistake on the part of International's accountant. Petitioner contends that the item in question was not a loan at all and that repayment was never contemplated. Instead, petitioner asserts that the item in question represents actual distributions made to McCoy Co. (but deposited with Fittings) out of International's assets. Rather than giving rise to a balance sheet item, the item in question, petitioner argues, was the measure of historical distributions from International's assets. As support for that recharacterization, petitioner professes a good faith desire on the part of the McCoy companies to take advantage of the tax deferral opportunities provided by DISC's. Petitioner pleads *755 reliance upon expert advice that DISC's were a model of informality and that the amounts deposited in Fittings' account would never have to be repaid to International. Petitioner explains that the McCoy companies proceeded on the basis of that understanding and did not think it necessary to treat the funds transferred to Fittings as anything other than "amounts due", that, in reality, would never have to be satisfied. Petitioner argues that the accountant's characterization on International's tax return of those amounts as producer's loans is nondispositive and represents nothing more than the accountant's erroneous, unilateral judgment as to the best means of describing the "amounts due" category on International's trial balance sheet. Petitioner places great emphasis on the McCoy companies' professed intent that International operate as a DISC in order to receive the resulting tax benefits. The amounts in question cannot represent anything other than actual distributions, petitioner contends, because, if there were not actual distributions, DISC status would be lost. In essence, petitioner argues that the outcome that was intended should determine the substance of the underlying *756 transaction. Since characterizing the amounts due as distributions is the only means by which International can retain its DISC status, petitioner urges that, based on the intent that such be the case, the funds deposited in Fittings' account must have been, in substance, actual distributions and not loans. In support of its argument, petitioner points us to Advance International, Inc. v. Commissioner, 91 T.C. 445 (1988). In Advance, a parent corporation created a subsidiary "buy-sell" DISC. The DISC purchased and resold the parent's export products. On its books, the DISC maintained an account entitled "intercompany clearing account" to keep track of, among other things, funds transferred to the parent corporation. The balance of the account never reached zero and, at year's end, the DISC listed the debit balance of the account as a qualified export asset. Respondent treated the debit balance as a receivable that was not a qualified export asset. The taxpayer argued that, if not a qualified export asset, the account should be treated as recording the amount of constructive distributions. The Court found that the debit balance of the account *757 did not represent a qualified export asset but, instead, represented amounts transferred to the parent corporation in excess of costs of goods sold and related price adjustments. Petitioner also notes that the DISC provisions were revoked as of December 31, 1984. As part of that revocation, all existing accumulated DISC income was deemed to be nontaxable when distributed. Sec. 1.921-1T, Temporary Income Tax Regs., 49 Fed. Reg. 40013 (Oct. 12, 1984). Thus, petitioner urges that adoption of its position, with respect to International's accumulated DISC income, would not bestow upon International a windfall greater than the DISC (and its shareholder, McCoy Co.) would have received if International's existence as a DISC had been prolonged for only a few short months. 2. Respondent's Argument
Respondent contends that the item in question represents an amount due (an asset) not only in form but in substance. She argues that International did indeed loan funds to Fittings and reported those funds as "producer's loans", in a fashion consistent with the substance of the transaction. Respondent notes that, so long as those amounts were characterized as *758 assets of International, McCoy Co. (International's parent) was able to avoid realization of income with regard to the amounts deposited with Fittings. C. Our Analysis
Petitioner relies heavily on Advance International, Inc. v. Commissioner, supra.In Advance, respondent conceded that the amounts transferred to the parent corporation did not constitute a loan (and we stated that there was no evidence to the contrary). Id. at 460. We concluded, on the facts before us, "that the amounts transferred * * * during each year in issue in excess of cost of goods sold and adjustments to transfer price were actual (not constructive) distributions of * * * earnings." Id. at 461. Such amounts, therefore, were not to be included in the DISC's assets, qualified or nonqualified, for purposes of determining whether the 95-percent qualified export asset test had been satisfied. Id.Advance is distinguishable. Respondent has not here conceded that the item in question is not a loan. Also, there is evidence that it is a loan. Therefore, we must look to all the evidence at hand *759 to determine the nature of the item in question. The rules of corporate substance generally necessary for a corporate subsidiary to be recognized as an entity independent from its parent are relaxed in the case of a DISC. Sec. 1.992-1(a), Income Tax Regs. Nevertheless, separate incorporation of the DISC is required to make it possible to keep a record of the income that is subject to the special treatment accorded to DISC's. Id. Separate books and records must be kept. Id. Thus, corporate formalities may not be dispensed with entirely. To show an actual distribution from International to McCoy Co., petitioner would, at least, have to show a transfer of funds and the lack of intent to make a loan. Compare Advance International, Inc. v. Commissioner, 91 T.C. 445, 460-461 (1988), with Pierce v. Commissioner, 61 T.C. 424, 430-432 (1974). Petitioner has not made the necessary showing. At trial, Jim McCoy, president of International, testified as follows as to the relationship between International and Fittings with respect to International's sales receipts: But my understanding was that * * * International collected *760 the money, but they loaned it to us [Fittings] in a very -- in an advantageous situation, and that the money didn't have to be returned, or at least there was no statute at that time that said when it had to be returned. So from a practical standpoint, you could just use the money and loan it from one to the other or transfer it. And there, again, I am not an accountant, so I don't know. Thus, at best, management's understanding of what was intended is unclear. Moreover, there is evidence that a loan was intended. The item in question was characterized as "amounts due" to International in the accountant's trial balances for 2 years. On International's tax returns for the 1984 tax year, it was shown as "producer's loans". Interest was calculated on the outstanding balance; that interest was reported as such by International and deducted as such by petitioner on the consolidated return. International's returns and the consolidated returns were reviewed and accepted yearly by the officers of the McCoy companies. Petitioner would neutralize such evidence by explaining that the characterizations involved were solely those of the accountants, over which the officers of the McCoy *761 companies exercised little, if any, supervision, and that the officers just did not notice the tax treatment of the "producer's loans" on the various returns. We have our doubts as to the claimed disregard of the officers. For the 1984 tax year, the sums of "producer's loans" and interest on such loans shown on International's DISC return were $ 412,894 and $ 28,898, respectively. Those are not inconsequential sums. The former sum is large in comparison to qualified export receipts shown of $ 351,907. It is even large in comparison to the receipts of the affiliated group, $ 2,954,575, shown on the consolidated return. We doubt that such amounts would have been disregarded by successful businessmen, such as John and Jim McCoy impressed us to be. Moreover, it is not sufficient for petitioner to show that the officers of International were befuddled by the complexity of the DISC provisions, threw up their hands in surrender, and relied on their accountants to get things straight. [7] Petitioner bears the burden of proof. Rule 142(a). To succeed on its theory, petitioner has the burden of showing that, indeed, distributions were made, yearly, in amounts equal to the annual increases *762 in "producer's loans", so that such "producer's loans" were not to be included in the DISC's assets, qualified or nonqualified, for purposes of determining whether the 95-percent qualified export asset test had been satisfied. Petitioner has not shown that any such distributions were made. We cannot find, based on such testimony, or from other testimony, or from the record as a whole, the necessary intent to make distributions. We have no doubt that management of the McCoy companies only wished to take advantage of the legitimate tax advantages available to a DISC. Nonetheless, they paid insufficient attention to the prerequisites to such advantages. Their conduct and intentions were ambiguous with regard to the so-called producer's loans. We find that the item in question did not represent actual distributions and we conclude that the so-called producer's loans were nonqualified assets for purposes of the qualified export asset test. Cf. TSI Incorporated v. United States,     F.2d     (8th Cir., Oct. 8, 1992). Accordingly, International failed to qualify as a DISC for its 1984 tax year. [8]
*763 II. Consequences of DISC Disqualification
A. In General; International a Former DISC
Upon its disqualification, International became a "former DISC". See sec. 992(a)(3). The failure of International to qualify as a DISC for its 1984 tax year has two direct consequences. First, International is subject to the taxes generally imposed on corporations under the Internal Revenue Code. See Addison International, Inc. v. Commissioner, 90 T.C. 1207, 1223 (1988), affd. 887 F.2d 660 (6th Cir. 1989). Second, all of International's previously accumulated DISC income is deemed distributed to its sole shareholder, McCoy Co. See sec. 995(b)(2)(A). B. Application of Section 482
International reported taxable income of $ 123,913 for its 1984 tax year. Respondent argues, however, that all items of income and deduction of International should be allocated to Fittings under section 482 to more clearly reflect income. As support for her allocation, respondent argues that employees of Fittings, not International, earned all of the income in question and that International's only function was to act as a conduit through *764 which funds owing to Fittings were routed. Under section 482, respondent may allocate income, deductions, and other items between a disqualified DISC and a commonly controlled corporation in order to clearly reflect the income of both and prevent the avoidance of taxes. Jet Research, Inc. v. Commissioner, T.C. Memo. 1990-463. Respondent's discretion to make allocations under section 482 may be disturbed only if they are arbitrary, capricious, or unreasonable. Haag v. Commissioner, 88 T.C. 604, 614 (1987), affd. 855 F.2d 855 (8th Cir. 1988); Hospital Corp. of America v. Commissioner, 81 T.C. 520, 594 (1983). Petitioner has neither introduced any evidence nor made any argument in opposition to respondent's allocation. We conclude that petitioner concedes that issue. Accordingly, we hold that International's items of income and deduction for the 1984 tax year are allocable to Fittings under section 482. [9]
*765 C. Transferee Liability
Having reallocated all of International's income to Fittings under section 482 for International's 1984 tax year, we must redetermine a deficiency of zero in International's tax liability for that year. Accordingly, the recipient of the DISC's assets cannot be liable as a transferee subject to the procedures of section 6901. See Sherrod v. Commissioner, 16 B.T.A. 622, 625 (1929). D. Receipt of Deemed Distributions
As stated above, pursuant to section 995(b)(2)(A), upon disqualification of International as a DISC, all of International's accumulated DISC income is deemed distributed to its sole shareholder, McCoy Co. International had previously accumulated DISC income of $ 140,632. Section 995(b)(2)(B) provides: (B) Distributions described in subparagraph (A) shall be deemed to be received in equal installments on the last day of each of the 10 taxable years of the corporation following the year of the termination or disqualification described in subparagraph (A) (but in no case over more than twice the number of immediately preceding consecutive taxable years during which the corporation was a DISC). International *766 existed as a DISC for only 2 years. According to respondent, therefore, McCoy Co., if it so elects, will be deemed to have received International's previously accumulated DISC income in four equal installments of $ 35,158, beginning on December 31, 1984. According to respondent, if McCoy Co. does not elect such installment treatment, it will be deemed to have received $ 140,632 as a distribution on December 31, 1984. Petitioner does not contest the application of those principles in the event of International's disqualification as a DISC and therefore is bound by the results flowing from their operation. The parties shall reflect any election by McCoy Co. in their Rule 155 computation. III. Additions to Tax
A. Negligence
Respondent determined additions to tax under section 6653(a)(1) and (2) in connection with the consolidated return made by petitioner for the affiliated group's 1985 tax year. Respondent determined similar additions to tax under section 6653(a)(1) and (2) with respect to International for its 1984 tax year, for which respondent asserted transferee liability. Having redetermined a deficiency of tax in the amount of zero for International, we must *767 therefore also redetermine additions to tax under section 6653(a)(1) and (2) of zero. Accordingly, there is no transferee liability for such additions to tax. Sherrod v. Commissioner, supra.
Respondent contends that Fittings was negligent in not reporting the $ 123,913 of current income allocated to it from International under section 482. She also argues that McCoy Co. was negligent in not reporting a deemed distribution of $ 35,158, consisting of one-fourth of the accumulated DISC income of International. [10] To sustain respondent's additions for negligence, we must determine that Fittings and McCoy Co., respectively, should have recognized that (1) for its 1984 tax year, International failed to qualify as a DISC and (2) such failure would have an adverse tax consequence for such corporation (i.e., Fittings or McCoy). [11]
*768 Petitioner contends that those negligence additions should not be sustained since Fittings and McCoy Co. relied, in good faith, on the advice of their accountant. Petitioner claims that the complex nature of the DISC rules as well as the limited tax and financial expertise of their officers made it virtually impossible for them to detect any errors in the tax advice given by their accountant. The burden of proof on this issue rests with petitioner. Rule 142(a). Section 6653(a)(1) provides that, if any part of any underpayment of tax is due to negligence or intentional disregard of rules or regulations, there shall be added to the tax an amount equal to 5 percent of the underpayment; section 6653(a)(2) imposes an addition to tax equal to 50 percent of the interest payable under section 6601. Negligence is defined as the failure to exercise the due care of a reasonable and ordinarily prudent person under like circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). As a general rule, a taxpayer possesses the duty of filing an accurate return, and this duty cannot be avoided through placing the responsibility on an agent. Pritchett v. Commissioner, 63 T.C. 149 (1974); *769 Enoch v. Commissioner, 57 T.C. 781 (1972); American Properties, Inc. v. Commissioner, 28 T.C. 1100 (1957), affd. 262 F.2d 150 (9th Cir. 1958). In the event, however, that a tax return is erroneous as a result of incorrect substantive tax advice obtained from a fully informed professional, taxpayers generally will not be held negligent for relying on such counsel. Langer v. Commissioner, T.C. Memo. 1990-268; Kennedy v. Commissioner, T.C. Memo. 1987-430; see United States v. Boyle, 469 U.S. 241, 251 (1985). Although failure to apprehend disqualification under the DISC provisions may in some circumstances be negligent, we do not believe that the negligence additions for that error can in this case rest at the doorstep of Fittings and McCoy Co. The conclusion that International retained its qualified DISC status was the result of erroneous substantive tax advice given by the McCoy companies' accountant. Although matters of fact and unambiguous statutory application may not be successfully delegated by *770 taxpayers, determinations such as the one at issue reasonably justify reliance upon a tax professional. Here, Fittings and McCoy Co., in good faith, followed the advice of their accountant, who was in possession of all the relevant information required to draw correct conclusions as to the tax provisions in question and to submit accurate tax returns on their behalf. Although such advice was erroneous, we believe that Fittings and McCoy Co. exercised due diligence and reasonable care in following the directions of their accountant. Alternatively, respondent contends that Fittings and McCoy Co. were negligent in selecting an accountant who admittedly had no experience in preparing DISC returns. Such an argument, however, carries little persuasive weight in an area as relatively obscure as the DISC rules. The McCoy companies engaged a firm of certified public accountants and were justified, albeit mistaken, in the assumption that such professionals would inform themselves and prepare accurate returns even in those areas previously unexplored by them. As a result of Fittings' and McCoy Co.'s good faith reliance on the fully informed substantive tax advice of their accountant, we *771 hold that they are not liable for additions to tax for negligence under section 6653(a). B. Substantial Understatement of Tax
Respondent also determined an addition to tax under section 6661 in connection with the consolidated return made by petitioner for the 1985 tax year. Respondent determined a similar addition to tax under section 6661 against International, for its 1984 tax year, for which she asserted transferee liability. For the same reasons as with regard to the negligence additions, there is no transferee liability with regard to the section 6661 addition. For section 6661 additions to tax assessed after October 21, 1986, section 6661(a) provides: "If there is a substantial understatement of income tax for any taxable year, there shall be added to the tax an amount equal to 25 percent of the amount of any underpayment attributable to such understatement." A substantial understatement of income tax is defined in section 6661(b) as an understatement exceeding the greater of (i) 10 percent of the tax required to be shown on the return, or (ii) $ 10,000. As a general rule, the term "understatement" means the excess of the amount of tax required to be shown on the *772 return over the amount of tax imposed that is actually shown on the return, reduced by any rebate within the meaning of section 6211(b)(2). Sec. 6661(b)(2)(A). Under section 6661(b)(2)(B), however, the amount of the understatement, for the purposes of the section 6661(a) computation, is reduced by that portion of the understatement that is attributable to (1) the tax treatment of any item by the taxpayer if there is or was substantial authority for such treatment, or (2) any item with respect to which the relevant facts affecting the item's tax treatment are adequately disclosed in the return or in a statement attached to the return. Petitioner bears the burden of proving that respondent's determination is erroneous. Rule 142(a). We have made findings from which it could be concluded that there was a substantial understatement of income for the year at issue. Petitioner does not attempt to reduce the possible understatement on the grounds of substantial authority. However, petitioner argues that no section 6661 addition should be upheld since it made adequate disclosure on the tax return of the facts giving rise to respondent's adjustments, which disclosure has the effect, *773 under section 6661(b)(2)(B), of reducing the amount of the understatement to zero. As previously noted, section 6661(b)(2)(B) reduces the understatement where taxpayers have provided adequate disclosure of relevant facts affecting an item's tax treatment either in the return itself or in a statement attached to the return. Where, as here, no attachments were made to the returns in question, taxpayers can still satisfy the requirements of adequate disclosure by providing, on the return, sufficient information to enable respondent to identify the potential controversy involved. Schirmer v. Commissioner, 89 T.C. 277 (1987); Jaques v. Commissioner, T.C. Memo. 1989-673. The controversy here in question involves the omission of income by McCoy Co. and Fittings, which resulted from International's disqualification as a DISC. The consolidated return made with respect to Fittings' and McCoy Co.'s income for the 1985 tax year, however, did not provide any information whatsoever relating to the consequences of such disqualification. Petitioner therefore has no basis for arguing that it made sufficient disclosure on that consolidated *774 return to enable respondent to identify the potential controversy involved. [12]
Similarly, there is no disclosure on International's DISC return *775 for the 1984 tax year of information sufficient for respondent to identify the potential controversy involved. International did not believe itself disqualified as a DISC, and pointed out no problems with the so-called "producer's loans" that would have alerted respondent to the consequent adjustments necessary with regard to McCoy Co. and Fittings. Indeed, any disclosure on International's return would have been inadequate, since International was not a "pass-through entity" for which such surrogate disclosure is permitted. See sec. 1.6661-4(e), Income Tax Regs.
Nor can we sustain petitioner's argument that respondent abused her discretion in failing to waive these additions to tax pursuant to section 6661(c). The record gives no indication that petitioner sought such a waiver prior to trial or that petitioner provided to respondent any evidence regarding reasonable cause or good faith to support a waiver. Respondent simply had no information, prior to trial, that would have led her to consider waiving the section 6661 penalties. Accordingly, as we noted in Brown v. Commissioner, T.C. Memo. 1992-15, "we cannot find that respondent abused * * *776 * [her] discretion when petitioner never requested respondent to exercise it." Decision will be entered under Rule 155 in docket No. 5626-90. Decision will be entered for petitioners in docket No. 5627-90. Footnotes
1. The notice of transferee liability here in question is addressed to "McCoy Enterprises, Inc. and Subsidiaries", and such description has been adopted by the parties in styling their pleadings in the transferee liability proceeding (docket No. 5627-90). It is not clear to us whether respondent is asserting transferee liability against any entity other than McCoy Co. Since we decide that there is no transferee liability, we need not decide whether any corporation other than the immediate transferee, McCoy Co., might be liable as a transferee.↩
2. If we decide the first issue, whether International qualified as a DISC for its taxable year ended Oct. 31, 1984, in the affirmative, petitioners concede that McCoy Co. is taxable on a deemed distribution of $ 83,532 from International for McCoy Co.'s taxable year ended Sept. 30, 1985. Since we decide the first issue in the negative, petitioners' concession is of no effect.↩
3. The term "producer's loans" will, for the present, be used as a term of convenience. No assumption should be made that such loans qualify within the meaning of sec. 993(b)(5) and (d).↩
4. See Revenue Act of 1971, Pub. L. 92-178, secs. 501-507, 85 Stat. 497, 535-553. ↩
5. See secs. 921-927.↩
6. Moreover, the accumulated DISC income limitation found in sec. 993(d)(1)(A) would preclude a substantial portion of the item in question from qualifying as a producer's loan, so that the 95-percent test of sec. 992(a)(1)(B) likely would be failed. Furthermore, petitioner has not shown compliance with the limitation of sec. 993(d)(2).↩
7. Jim McCoy, president of International, was asked on direct examination what the relationship was between International and Fittings with regard to the sales receipts of International deposited into Fittings' bank accounts. He answered, in part: "Well, you know, I never did completely, I guess, totally understand this. I kind of relied on counsel and -- the attorneys and the accountants." ↩
8. It is true that all DISC elections were revoked on Dec. 31, 1984, and that accumulated DISC income (previously untaxed) was deemed nontaxable when distributed. See sec. 1.921-1T, Temporary Income Tax Regs., 49 Fed. Reg. 40013↩ (Oct. 12, 1984). That result, however, does not accord International a license to violate the DISC provisions actually in effect for the 1984 year.
9. No issue has been raised concerning, nor do we address, the consequence of Fittings' and International's utilization of different taxable years.↩
10. Since we have concluded that International did not operate as a qualified DISC for its 1984 tax year, McCoy Co. cannot be said to have received the deemed distribution of $ 83,532 that was claimed by International but never reported by petitioner for the tax year 1985. Accordingly, McCoy Co. cannot be held negligent on the basis of respondent's now inapplicable alternative argument. ↩
11. Neither party has taken into account the special circumstance of Fittings' and McCoy Co.'s being members of an affiliated group of corporations, for which, as common parent, petitioner made the consolidated return. For that reason, we also will disregard such special circumstance and consider only the negligence of either Fittings or McCoy Co., as appropriate, in causing an underpayment in tax.↩
12. Petitioner argues that disclosure was made since, on the consolidated return, the consolidated Schedule M-1 shows the following entry: "Orion International DISC distribution nontaxable $ 412,894." That item, however, represents International's putative liquidating distribution made for its short tax year ended Dec. 31, 1984. That item is inconsistent with International's disqualification as a DISC during its prior taxable year (the 1984 tax year) and, if anything, can only be concluded to have misled, rather than informed, respondent. Accordingly, the M-1 "disclosure" is of no assistance to Fittings and McCoy Co. in avoiding substantial understatement penalties, since it does not adequately apprise respondent of the nature of any potential controversy with respect to the item in question. See Rev. Proc. 85-19, 1985-1 C.B. 520↩.