McCOY ENTERPRISES, INC., & Subsidiaries, Petitioner– Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent– Appellee.

No. 93–9014.

United States Court of Appeals, Tenth Circuit.

June 20, 1995.

Merrill R. Talpers of Olsen & Talpers, Kansas City, MO, for petitioner-appellant.

David English Carmack of U.S. Dept. of Justice, Tax Div. (Loretta C. Argrett, Asst. Atty. Gen., and John A. Nolet, U.S. Dept. of Justice, Tax Div., with him on the briefs) and David L. Jordan, Chief Counsel of I.R.S., Branch 4, Tax Litigation Div., Washington, DC, for respondent-appellee.

Before EBEL, KELLY, Circuit Judges and COOK,* District Judge.

EBEL, Circuit Judge.

This case involves the special tax treatment of domestic international sales corporations ("DISCs"). Petitioners–Appellants McCoy Enterprises and Subsidiaries (collectively, "McCoy") created a wholly-owned sub-

---

* The Honorable H. Dale Cook, Senior District Court Judge, United States District Court for the Northern District of Oklahoma, sitting by designation.

sidiary to account for its foreign sales and to take advantage of the tax benefits given to DISCs. The net income of the subsidiary was distributed to its parent as a "loan" each year and carried on the subsidiary's books as an account receivable. McCoy maintains that these amounts were not really loans, but were actually distributions to the parent shareholder company. If the amounts were loans, then the subsidiary would have lost its DISC status because the assets represented by those loans, in the form of accounts receivable, would have resulted in the subsidiary's failure to maintain the required percentage of its assets as qualifying export assets.

The IRS determined that the amounts were loans and that the subsidiary failed to qualify as a DISC for the tax year ending October 31, 1984. As a result, the IRS determined that McCoy owed a tax deficiency. The IRS also imposed a penalty on McCoy for substantial understatement of tax for the year in question. The Tax Court ruled that McCoy owed a tax deficiency and must pay the substantial understatement penalty, and McCoy filed this appeal. We conclude that McCoy is bound by its original characterization of the payments as loans and, therefore, we affirm the Tax Court's ruling on McCoy's liability. While the imposition of the understatement penalty presents a closer question, we affirm the Tax Court on that issue as well.

## I. BACKGROUND

During the period at issue in this dispute, McCoy Enterprises was the parent company for the wholly-owned subsidiaries McCoy Company, Orion Industries, and Orion Fittings ("Fittings"). Together, the companies engaged in the manufacture, marketing, and sales of pipe fittings and related products domestically and abroad. In 1982, a new company, Orion International ("International"), was added to this corporate family as a subsidiary of McCoy Company to take advantage of tax benefits extended to DISCs. Qualifying DISCs are exempt from paying federal income taxes under Section 991 of the

Internal Revenue Code ("I.R.C."). A portion of a DISC's income (about one-half) is taxable as a "deemed distribution" to the DISC's shareholders and the remaining accumulated DISC income is deferred from taxation to the shareholders until cash is actually distributed, the shareholders dispose of their stock, or the company loses its DISC status.

International existed only as a "paper" or "dummy" company in order to account for McCoy Company's foreign sales and to take advantage of the tax breaks given to DISCs. International was formed with an initial cash investment of $2,500, and it carried that amount as "working capital" on its balance sheet each year. Foreign customers of Fittings were billed by International, but their payments were commingled with Fittings' accounts and used to pay Fittings' expenses. At the end of each year, Fittings segregated the sales and expenses allocable to foreign sales, and independent accountants prepared separate financial statements and tax returns for International. The net income from foreign sales that was deposited in Fittings' bank account was reflected as earnings on International's books with a corresponding amount listed as an asset called "producer's loans."[1] Interest was then imputed and added to the producer loan account. Since all of International's income was carried as producer's loans, International never reported any cash distributions to its sole shareholder, McCoy Company, and only reported "deemed distributions" as required by I.R.C. § 995(b). International filed tax returns as a DISC.

In 1984, Congress enacted legislation effective for tax years ending after 1984 which limited the tax benefits available to DISCs. As a result, International went out of existence and distributed all of its assets to McCoy Company, filing its final DISC return for the abbreviated period of November 1, 1984 to December 31, 1984.

For the year ending September 30, 1985, McCoy Enterprises filed a consolidated federal income tax return as the common parent company for McCoy Industries, McCoy Com-

---

1. A "producer's loan" has a technical definition under I.R.C. § 993(d). However, neither party in this action contends that these advances to Fittings met that statutory test.

pany, and Fittings. McCoy Enterprises reported the $412,894 previously carried by International as producer's loans (i.e. accumulated DISC earnings) as a nontaxable distribution received upon International's dissolution.[2] On that return, McCoy Enterprises did not include the deemed distribution reported by International to McCoy Company on its DISC return for the year ending October 31, 1984.

The Commissioner of the Internal Revenue Service ("the Commissioner") then conducted an audit and determined that International did not qualify as a DISC during its year ending October 31, 1984 and that, therefore, the $123,913 earned by International for that year was taxable.[3] The Commissioner asserted that the income should be allocable to Fittings, and thus, taxable to the consolidated McCoy group. The Commissioner also found that McCoy Company (as International's sole shareholder) effectively received the previously untaxed $140,632 accumulated DISC earnings of International as a dividend once International was found not to qualify as a DISC, and that the consolidated McCoy group also owed taxes on that amount. In sum, a tax deficiency of $121,691 was asserted against McCoy Enterprises, as well as a penalty for a negligent filing under I.R.C. § 6653(a) in the amount of $6,085 plus 50–percent of the interest due on the deficiency. Furthermore, the Commissioner assessed an additional penalty of $30,423 for substantial understatement of tax liability pursuant to I.R.C. § 6661.

McCoy contested the Commissioner's determinations by filing a petition with the United States Tax Court requesting a redetermination of its tax liability. The Commissioner argued that International did not qualify as a DISC for the year ending October 31, 1984 because it failed to meet the 95 percent "qualified export assets" test of I.R.C. § 992(a)(1)(B). Specifically, the Commissioner explained that International's claimed "producer's loans" did not meet the statutory definition for such loans under I.R.C. § 993(d), and that the so-called loans were not, therefore, export assets. Once the "producer's loans" were treated as non-qualifying assets, the Commissioner continued, International was left with less than 95 percent of its assets comprising qualified export assets, and, as such, International no longer qualified as a DISC.

McCoy did not argue that the loans were qualified export assets, but rather, maintained that the "loans" were not really loans, and thus, the producer loans account was not really an asset. McCoy explained that the "loans" advanced to the parent McCoy Company really were distributions and were mislabelled as "loans" by the accountants even though no one ever intended that those sums would be repaid. McCoy concluded that International's only asset was the $2,500 carried as working capital, which was a qualified export asset because it was reasonably necessary to meet the working capital requirements of International's export business.

The Commissioner responded that the "producer's loans" were in fact loans, even if they were not producer's loans within the definition of § 993(d), and that McCoy could not recast its own previous characterization of the loans. Furthermore, the Commissioner asserted that the McCoy Company did not declare any of the purported distributions as income on its previous tax returns, and the IRS would now be precluded by the statute of limitations from taxing the McCoy Company for any such unreported income.

The Tax Court ruled in favor of the Commissioner and held that McCoy owed unpaid taxes as well as an understatement penalty. *See McCoy Enterprises, Inc. v. Commissioner,* 64 T.C.M. (CCH) 1449, 1992 WL 359140 (1992). Specifically, the court ruled that the "producer loans" were loans rather than distributions and that they did not qualify as export assets. Therefore, the court concluded that the income earned for the year end-

---

2. Temporary Treasury Regulation § 1.921–T allowed qualified DISCs to make a nontaxable distribution of accumulated DISC income as of December 31, 1984. Of course, that regulation would not be applicable to International if it lost its qualified DISC status before making its final distribution.

3. In the alternative, the Commissioner determined that even if International qualified as a DISC during the year ending October 31, 1984, the McCoy Enterprise's consolidated return should have reported and been taxed on the deemed distribution of $83,532 made from International to McCoy Company.

ing October 31, 1984 by International was taxable, the income should be allocated to Fittings, and it was taxable to the consolidated group. The court also upheld the Commissioner's assessment of a penalty for McCoy's substantial understatement of its tax liability. However, the court found that McCoy was not negligent in understating its liability because it concluded that McCoy reasonably relied on the incorrect tax advice of its accountants. McCoy now appeals the Tax Court's decision.

## II. DISCUSSION

### A. International's DISC Status

 For International to have retained its DISC status for the tax year in question, it needed to satisfy the qualified export assets test of I.R.C. § 992(a)(1)(B). That test specifies that at least 95 percent of a company's assets must be qualified export assets. Producer's loans can constitute qualified export assets if they meet the definition outlined in I.R.C. § 993(d), but neither party in this action contends that the amounts listed as "producer's loans" on International's books satisfied that statutory definition. Instead, McCoy argues that the amounts listed as loans were actually shareholder distributions—and, therefore, were not assets at all, either qualified or unqualified—while the Commissioner responds that the amounts were loans and that the loans were not qualified export assets. The Tax Court accepted the Commissioner's position and we now review its legal conclusions *de novo* and its factual findings for clear error. *See Resale Mobile Homes, Inc. v. Commissioner,* 965 F.2d 818, 821 (10th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 212, 121 L.Ed.2d 151 (1992).

██ International's and McCoy's accounting of the amounts in question supports the Tax Court's characterization of the amounts as loans. The amounts were carried on International's books and reported to the IRS as accounts receivable, and interest was accrued on the outstanding balances. It is well settled that taxpayers are generally held to the consequences of their own characterizations of transactions. *See, e.g., Commission-*

*er v. National Alfalfa Dehydrating & Milling Co.,* 417 U.S. 134, 149, 94 S.Ct. 2129, 2137–38, 40 L.Ed.2d 717 (1974); *Uri v. Commissioner,* 949 F.2d 371, 373–74 (10th Cir. 1991). McCoy dismisses the nominal reporting of the amounts as the inventions of the accountants, and maintains that, because no one ever intended that the amounts would be repaid, they cannot be loans. However, this argument ignores the evidence presented at trial and would allow a significant profit to escape taxation through a retroactive recharacterization of the transactions at issue.

The testimony at trial revealed that top management intended that the amounts would be "loans," but that there would be no fixed duty of repayment. For example, Jim McCoy, one of the top executives at McCoy, explained that he understood that the transactions would be "handled in such a manner that there were loans," R.O.A. at 59, and Clay Reeder, McCoy's Treasurer, testified that the amounts listed as "producer loans" were "considered a loan" even though he had "no idea when [the loans would] need to be repaid," *Id.* at 64. While a clear lack of an intent to repay may provide evidence that the substance of a transaction was more akin to a distribution than a loan, *see Advance Int'l, Inc. v. Commissioner,* 91 T.C. 445, 460, 1988 WL 90981 (1988); *Pierce v. Commissioner,* 61 T.C. 424, 430–431, 1974 WL 2716 (1974), here, as evidenced by the testimony of top management, management's intent was unclear.

However, what is clear from the record is that management intended to characterize these payments as loans in order to take advantage of the DISC-related tax benefits. As the Commissioner explains, accounting for the payments as distributions would have made the income taxable to the shareholder in the years distributed and would have defeated the whole purpose of the arrangement. Given that management wished to avoid such tax consequences, it seems reasonable to infer that they actually intended the amounts to be loans even though they established no set repayment terms. Furthermore, it is clear that these transactions were, in fact, clearly represented as loans on the company's books, even to the point of

accruing interest on the amounts purportedly loaned.

Thus, we affirm the Tax Court's ruling that McCoy is liable for the tax deficiency and we hold McCoy to its own chosen characterization of the amounts in question. To hold otherwise would allow McCoy now to change its initial approach and would permit income to be shifted to periods in which the statute of limitations forecloses the IRS from recovering any back taxes. As a matter of common sense and sound policy, we cannot allow McCoy to employ such a "bait and switch" strategy to take advantage of the statute of limitations. *See Unvert v. Commissioner,* 72 T.C. 807, 814–15, 1979 WL 3842 (1979), *aff'd,* 656 F.2d 483 (9th Cir.1981), *cert. denied,* 456 U.S. 961, 102 S.Ct. 2036, 72 L.Ed.2d 484 (1982).

## B. I.R.C. § 6661 Substantial Understatement Penalty

■ As we uphold the Tax Court's decision that McCoy was deficient on the payment of its taxes, we also must consider whether the Tax Court properly allowed the Commissioner to levy a penalty on McCoy for substantially understating its taxes. I.R.C. Section 6661[4] provides that a penalty of 25% of the understated amount shall be imposed if there is a "substantial understatement" of tax liability. I.R.C. § 6661(a). An understatement is substantial if it exceeds the greater of 10 percent of the tax required to be shown or $10,000. I.R.C. § 6661(b)(1). However, a taxpayer can avoid this penalty if the understated amount is based on substantial authority or the taxpayer adequately disclosed the relevant facts surrounding the treatment of the relevant transaction(s) in his or her return or in a statement attached to the return. I.R.C. § 6661(b)(2)(B). The Commissioner may also waive the understatement penalty if the taxpayer shows reasonable cause and good faith for the understatement. I.R.C. § 6661(c). We review the Commissioner's decision to waive or allow the penalty to stand for abuse of discretion. *Mauerman v. Commissioner,* 22 F.3d 1001, 1004 (10th Cir.1994).

The Tax Court upheld the penalty on the grounds that McCoy did not adequately disclose all relevant facts and that McCoy failed specifically to request a waiver from the Commissioner.[5] In considering this judgment, we must review the Tax Court's factual findings for clear error and its legal conclusions *de novo. Worden v. Commissioner,* 2 F.3d 359, 361 (10th Cir.1993).

■ The adequate disclosure requirement can be satisfied by providing information that " 'reasonably may be expected to apprise the Internal Revenue Service of the identity of the item, its amount, and the nature of the potential controversy.' " *Cramer v. Commissioner,* 101 T.C. 225, 255, 1993 WL 369030 (1993) (quoting Treas. Reg. § 1.6661–4(b)(3) (1985)). Because McCoy did not file any separate disclosure statement, it must demonstrate that it adequately disclosed all of the relevant information on its tax return. All that McCoy can point to is a balance sheet that was attached to International's DISC return for the fiscal year ending October 31, 1984 and/or the partial year ending December 31, 1984 which revealed that producer loans exceeded the accumulated DISC income. However, the Tax Court correctly observed that any disclosures on International's return would have been inadequate in any event because International's return is not a "pass through entity" for which surrogate disclosure is permitted. *See McCoy,* 64 T.C.M. (CCH) at 1457, 1992 WL 359140 (citing Treas. Reg. § 1.6661–4(e) (1985)).

■ As McCoy failed to disclose adequately its understatement of tax liability, it can only challenge the understatement penalty if the Commissioner's decision not to waive the penalty constituted an abuse of discretion. However, the Tax Court declined to consider the merits of McCoy's abuse of

---

4. Congress subsequently repealed Section 6661 and that section does not apply to tax returns which were due after December 31, 1989. Section 6662 of the Internal Revenue Code now provides for the imposition of penalties for the substantial understatement of tax liability. Though repealed, Section 6661 still governs the instant case and we shall refer to its provisions in the present tense.

5. McCoy did not make an argument based on the substantial authority exception to section 6661.

discretion claim because it found that McCoy failed to request a waiver from the Commissioner. *McCoy*, 64 T.C.M. (CCH) at 1457. Several Tax Court decisions have required that taxpayers make a specific waiver request of the Commissioner in order later to challenge any purported failure to waive as an abuse of discretion. *See, e.g., Dugow v. Commissioner*, 66 T.C.M. (CCH) 588, 591, 1993 WL 330988 (1993); *Reinke v. Commissioner*, 65 T.C.M. (CCH) 2570, 2575, 1993 WL 140748 (1993), *aff'd*, 46 F.3d 760 (8th Cir.1995); *Klieger v. Commissioner*, 64 T.C.M. (CCH) 1624, 1637, 1992 WL 385420 (1992). The Tax Court reasons that it cannot find an abuse of discretion where there is no evidence that the Commissioner exercised any discretion at all. *Id.* ("Because petitioners have not shown that they requested waivers under section 6661(c) and that respondent denied those requests, there is no exercise of administrative discretion for us to review.").

Section 6661(c) provides that the Commissioner

> ... may waive all or any part of the addition to tax provided by this section *upon a showing by the taxpayer* that there was a reasonable cause for the understatement (or part thereof) and that the taxpayer acted in good faith.

I.R.C. § 6661(c) (emphasis added). In the instant case, McCoy has presented no evidence that it made such a showing to the Commissioner and afforded her an opportunity to exercise her discretion; rather, it claims that the mere challenging of the penalty in the Tax Court constituted an adequate request that the Commissioner exercise her discretion. However, the statute places the burden on the taxpayer to make a showing of reasonable cause and good faith and requires that the Commissioner actually exercise discretion in considering whether to grant the waiver. Thus, we conclude that section 6661(c) inherently encompasses the adminis-

trative presentation requirement heretofore applied by the Tax Court. This requirement demands that the taxpayer present his or her case first to the Commissioner before subjecting a denial of the waiver to judicial review for abuse of discretion.

■ The imposition of this presentation requirement finds support both in the only other circuit court to consider the issue, *see Reinke v. Commissioner*, 46 F.3d 760, 765 (8th Cir.1995) ("Since [the taxpayer] never asked the Commissioner to waive the addition to tax, it is difficult to fault the Commissioner for failing to waive [the penalty]."), as well as in a basic principle of administrative law. It is a well established principle of administrative law that where a party fails to present a claim to the proper administrative agency, courts will decline to consider that party's claim. *See Northwest Airlines, Inc. v. F.A.A.*, 14 F.3d 64, 73 (D.C.Cir.1994); 2 Charles H. Koch, Jr. & Ronald H. Wright, Jr., *Administrative Law and Practice*, § 10.24, at 278 (Supp.1994). In essence, before we can review the Commissioner's refusal to waive the understatement penalty pursuant to 26 U.S.C. § 6661(c), the record must reveal (1) that the Commissioner knows a taxpayer is claiming that the understatement should be excused by reasonable cause and good faith; (2) that the taxpayer's request has been presented with sufficient evidentiary support; and (3) that the Commissioner actually makes a determination on the issue.[6] While McCoy argues that the Commissioner could have easily determined that McCoy objected to the penalty, we also find it conspicuous that, in the face of so many opportunities and over a long period of time, McCoy cannot point to any single time at which it presented the waiver issue to the Commissioner to be ruled upon. Thus, as McCoy cannot demonstrate that it presented its objection to the understatement penalty to the Commissioner, we cannot conclude that the Commissioner abused her discretion when

---

**6.** This insistence on observing proper procedures also works to safeguard a taxpayer's rights. For example, in the Section 6661(c) context, even where the substance of a decision not to grant a waiver may have been correctly determined, we have placed a premium on procedural regularity in the Service's administrative proceedings.

Thus, in *Fisher v. Commissioner*, we determined that the Commissioner's failure to offer any reasons explaining the denial of a § 6661(c) waiver constituted an abuse of discretion regardless of what reasons may have supported the Commissioner's decision. 45 F.3d 396, 397 (10th Cir. 1995).

she did not *sua sponte* waive the penalty for understatement of tax liability.

## III. CONCLUSION

For the reasons explained above, we AFFIRM the judgment of the Tax Court.